# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ADVANTAGE PAYROLL SERVICES, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Docket No. 2:21-cv-00020-NT ) |
| RONALD RODE, et al., | ) ) |
| Defendants. | ) ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS OR STAY

Before me is the Defendants' motion to dismiss or stay this case pursuant to the *Colorado River* doctrine ("**Defs.' Mot.**") due to the existence of another case currently pending in state court in Louisiana. For the reasons stated below, the motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The 2016 Case

Defendant Ronald Rode was a licensee of Plaintiff Advantage Payroll Services, Inc., ("**Advantage**") through which he used Advantage's software and services to operate Defendant Payroll Services, Inc., ("**Payroll Services**") in Louisiana. Compl. ¶ 11 (ECF No. 1). After a licensing dispute arose, in August 2016, Mr. Rode sued Advantage and Plaintiff Paychex, Inc., ("**Paychex**") in this Court (the "**2016 Case**"). Compl. ¶ 12. The parties ultimately settled the case and entered into an agreement (the "**Settlement Agreement**") in March 2018. Compl. ¶¶ 13–14. Pursuant to the Settlement Agreement, the parties agreed that the terms of the agreement would be

governed by Maine law, that "any action arising out of or relating to" the Settlement Agreement was to be brought in a Maine state or federal court, and that the parties agreed to "waive all questions of personal jurisdiction or venue" and to "submit to the jurisdiction of the state of Maine with respect to any action arising out of or relating to [the Settlement] Agreement." Settlement Agreement § 18(K), (L) (ECF No. 1-1); Compl. ¶ 15. As a part of the Settlement Agreement, Mr. Rode and Payroll Services also agreed to a non-solicitation agreement (the "**Non-Solicitation Agreement**"). Settlement Agreement § 5; Settlement Agreement Ex. D; Compl. ¶ 16.

## II. The Alleged Breaches of the Settlement Agreement

The Plaintiffs allege that "[s]hortly after entering into the [Settlement] Agreement," Mr. Rode began to violate it. Compl. ¶ 25. Specifically, the Plaintiffs allege that he established a new payroll processing business in Louisiana (named PayrollHR Solutions) to compete against Advantage and Paychex using confidential client information and trade secrets misappropriated from Advantage and Paychex. Compl. ¶¶ 25–26; Verified Pet. for Damages ("**Louisiana Compl.**") ¶ 2(3) (ECF No. 26-1, PageID #s 234–42). The Plaintiffs contend that, in doing so, Mr. Rode acted in conjunction with some of his former Payroll Services employees, including Beau Thurman, Caleb Nations, and Ashley Hargroder. Compl. ¶ 26. But, as is explained in greater detail below, the Plaintiffs were not initially aware of Mr. Rode's involvement in this alleged scheme. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss or, Alternatively, Mot. to Stay Proceedings ("**Pls.' Opp'n**") 5 (ECF No. 26).

2

### III. The Louisiana Case[1]

In April of 2019, Paychex and Advantage filed a complaint (the "**Louisiana Complaint**") against Mr. Nations, Mr. Thurman, PayrollHR Solutions, and five John and Jane Does (the "**Initial Louisiana Defendants**") in Louisiana state court. Louisiana Compl. In the Louisiana Complaint, Paychex and Advantage alleged that after the Settlement Agreement was signed in March of 2018, Paychex hired Mr. Nations as an employee and required him to sign a confidentiality agreement. Louisiana Compl. ¶¶ 8, 10. While employed by Paychex, Mr. Nations allegedly gathered confidential information about Paychex's customers. Louisiana Compl. ¶¶ 13–14. In August of 2018, Mr. Nations quit and began working for Mr. Thurman and PayrollHR Solutions, and Paychex contends that Mr. Nations provided its confidential information to Mr. Thurman and Payroll HR Solutions, which they then used to poach Paychex's customers. Louisiana Compl. ¶¶ 12, 14–15.

Paychex and Advantage thus sued the Initial Louisiana Defendants for various alleged violations of Louisiana law (the "**Louisiana Case**"): Mr. Nations for breaching the confidentiality agreement that he had signed and for breach of fiduciary duty and the duty of loyalty, as well as all of the Initial Louisiana Defendants for violations of the Louisiana Uniform Trade Secrets Act and the Louisiana Unfair Trade Practice and Consumer Protection Law and for conspiracy. Louisiana Compl. ¶¶ 17–39.

---

[1] Both parties introduce a number of facts into the record about the pending litigation in Louisiana that I take as true for purposes of deciding this motion because neither party has disputed any of these facts or has argued that I should not consider them.

After a discovery dispute, on March 12, 2020, the judge in the Louisiana Case ordered the Initial Louisiana Defendants to produce some discovery that they had previously withheld. Louisiana Case Judgment (ECF No. 26-1, PageID #s 291–95). Paychex and Advantage claim that this discovery revealed that Mr. Rode had been assisting in the allegedly wrongful acts that had been the basis for the Louisiana Complaint. Pls.' Opp'n 5–6; Louisiana Compl. ¶ 14. Armed with this new information, in June 2020, Paychex and Advantage filed an amended complaint (the "**Louisiana Amended Complaint**") that added Ms. Hargroder and Mr. Rode as defendants. Louisiana Am. Compl. (ECF No. 26-1, PageID #s 297–306). In the Louisiana Amended Complaint, Paychex and Advantage allege that Ms. Hargroder, like Mr. Nations, had worked for Paychex and signed a confidentiality agreement. Louisiana Am. Compl. ¶¶ 8, 11. And they allege that Mr. Nations and Ms. Hargroder provided confidential information to Mr. Thurman, PayrollHR Solutions, and Mr. Rode, while working for Paychex. Louisiana Am. Compl. ¶ 14. The Louisiana Amended Complaint contains the same five causes of action as the Louisiana Complaint but adds Ms. Hargroder to the breach of confidentiality agreement and breach of fiduciary duty and duty of loyalty counts and adds Ms. Hargroder and Mr. Rode as defendants to the other three causes of action. Louisiana Am. Compl. ¶¶ 21–43.

The parties in the Louisiana Case have engaged in substantial written discovery and have taken over fifty hours of depositions, including of Mr. Nations, Ms. Hargroder, and Mr. Rode. Defs.' Mot. 3–4, 9 (ECF No. 23); Pls.' Opp'n 6. Mr. Rode was deposed over the course of two days, the second day being October 21, 2020. Pls.'

4

Opp'n 6. The Plaintiffs represent (and the Defendants do not dispute) that, as of November 22, 2021, discovery had not concluded in the Louisiana Case and that no trial date had been set. Pls.' Opp'n 5–6.

## IV.  The Instant Case

On January 14, 2021, the Plaintiffs filed the Complaint, alleging much of the conduct described above. They allege that Mr. Rode (individually and as an agent of Payroll Services) engaged in "corporate espionage," Compl. ¶¶ 25–29, which they say amounted to breaches of the Settlement Agreement and Non-Solicitation Agreement and violated Maine and federal law. Count I is a breach of contract claim against Mr. Rode for his alleged breach of the Non-Solicitation Agreement. Compl. ¶¶ 30–32. Count II is a breach of contract claim against Payroll Services alleging breaches of the Settlement Agreement and the Non-Solicitation Agreement. Compl. ¶¶ 35–38. Counts III and IV aver that Mr. Rode violated the Maine Uniform Trade Secrets Act and the Defend Trade Secrets Act of 2016 ("**DTSA**"), respectively. Compl. ¶¶ 42–44, 47–49.

After some early hiccups,[2] the Defendants filed their Answer to the Complaint on April 15, 2021. Answer (ECF No. 17). This litigation (the "**Federal Case**") then proceeded in due course, with the parties agreeing to use the discovery conducted in the Louisiana Case. Pls.' Opp'n Ex. I (ECF No. 26-1, PageID # 331). After a couple of

---

[2]   Default was entered against the Defendants, Order (ECF No. 10), but this entry of default was later set aside, Order (ECF No. 16).

5

extensions, the discovery deadline was set for November 17. Scheduling Order (ECF No. 22).

Sixteen days before discovery was set to close, the Defendants filed a motion to dismiss or, in the alternative, stay these proceedings pursuant to the *Colorado River* doctrine due to the existence of the Louisiana Case. Defs.' Mot. The Defendants did not request that the discovery deadline be extended or that discovery be held in abeyance while their motion remained pending. Accordingly, discovery closed on November 17, and, two days later, the Plaintiffs filed their notice of intent to seek summary judgment and requested a Local Rule 56(h) pre-filing conference. Pls.' Notice of Intent to File Mot. for Summ. J. and Need for Pre-Filing Conference (ECF No. 25). The Plaintiffs subsequently filed their response to the Defendants' motion, requesting that this case stay on track and proceed towards summary judgment. Pls.' Opp'n.

## LEGAL BACKGROUND

Because "there is nothing unusual about parallel litigation resolving similar controversies in both state and federal court," *Nazario-Lugo v. Caribevisión Holdings, Inc.*, 670 F.3d 109, 114 (1st Cir. 2012), "[i]t has long been established that the presence of parallel litigation in state court will not in and of itself merit abstention in federal court," *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 27 (1st Cir. 2010). "Concurrent federal-state jurisdiction over the same controversy does not generally lessen the federal courts' 'virtually unflagging obligation . . . to exercise their jurisdiction given them.'" *Id.* (alteration in original) (quoting *Colo. River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). This remains true even though "twin litigation may result in some measure of inefficiency and wasted resources, and there is some risk of inconsistent decisions from different courts on the same or similar issues." *Nazario-Lugo*, 670 F.3d at 114.

"In special cases, the pendency of a similar action in state court may merit federal abstention . . . ." *Jiménez*, 597 F.3d at 27. This abstention doctrine—known as the *Colorado River* doctrine—"is to be used sparingly and approached with great caution." *Nazario-Lugo*, 670 F.3d at 115. It is to be deployed only where there exist " 'exceptional' circumstances displaying 'the clearest of justifications' for federal deference to the local forum in the interest of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* (quoting *Colo. River*, 424 U.S. at 817–19).

The First Circuit has compiled a "non-exclusive list of factors" to consider when evaluating whether the requisite exceptional circumstances exist. *Jiménez*, 597 F.3d at 27. Those eight factors are:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at 27–28. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colo. River*, 424 U.S. at 818–19. These factors are "to be applied in a pragmatic, flexible manner with

7

a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). And "[t]he weight to be given any given factor depends on the circumstances at hand." *Nazario-Lugo*, 670 F.3d at 115. But "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. The cases in which these factors point towards abstention "are few and far between." *Jiménez*, 597 F.3d at 28.

## DISCUSSION

The *Colorado River* doctrine applies only to "parallel state court action." *Ambrose v. New Eng. Ass'n of Schs. & Colls., Inc.*, 100 F. Supp. 2d 48, 49 (D. Me. 2000); *see Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 8 (1st Cir. 1990) (describing how the *Colorado River* doctrine "permits federal courts to decline jurisdiction in favor of parallel state litigation"). So, the first question is whether the Louisiana Case is "parallel" to the Federal Case and thus whether the doctrine is even applicable. "While the two suits need not have a perfect identity of parties and issues" to be parallel, they must have "substantially the same parties litigat[ing] substantially the same issues in different forums." *Ambrose*, 100 F. Supp. 2d at 50 (quoting *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992)); *accord Britton v. Britton*, 223 F. Supp. 2d 276, 283 (D. Me. 2002).

The Defendants assert that the parties are identical in both actions (absent some other defendants) and that "both lawsuits are based entirely on the same core of operative facts." Defs.' Mot. 5. The Plaintiffs disagree, arguing that this litigation is not parallel because the Louisiana Case cannot fully resolve the Plaintiffs' claims

8

and because the parties are not the same in the two cases. Pls.' Opp'n 11–12. While the parties and issues here are not identical, there is considerable overlap between the two cases. But because I find that the balancing of the relevant factors tips decidedly against dismissal or a stay, I assume for the sake of argument that these actions are parallel and that it is appropriate to consider whether abstention is prudent.

Turning to the balancing test, the Defendants acknowledge that the first and last factors do not apply to this case. Defs.' Mot. 6. I thus focus on the remaining six factors in the First Circuit's "non-exclusive list," as well as one additional factor that I consider to be relevant in this case, the belatedness of the Defendants' motion.

Factor two looks at the geographical inconvenience of the federal forum. The Defendants contend that the District of Maine is only a convenient forum for Advantage, which is based in Maine, since Paychex is based in Rochester, New York, and the Defendants and most of the relevant witnesses are located in Louisiana. Defs.' Mot. 6–7. The Plaintiffs point out that Mr. Rode considered Maine to be a sufficiently convenient forum when he filed the 2016 Case, and when he agreed, in settling the 2016 Case, to litigate any dispute arising from the Agreement in Maine. Pls.' Opp'n 12–13. The Plaintiffs also note that they do not intend to rely on live testimony at trial. Pls.' Opp'n 13. I take the Defendants' point that Maine is less convenient than Louisiana, not only because they are located in Louisiana, but because it appears that many of the relevant events also occurred in Louisiana. This

9

factor weighs in the Defendants' favor, although I consider it to be one of the least important factors in the context of this particular case.

Factor three examines whether "piecemeal litigation" can and should be avoided. "The 'piecemeal litigation' to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating [the] *Colorado River* doctrine." *Jiménez*, 597 F.3d at 29. "Concurrent federal-state jurisdiction over the same action will necessarily involve some degree of 'routine inefficiency that is the inevitable result of all parallel proceedings.' " *Id.* (quoting *Villa Marina*, 915 F.2d at 16). This is only problematic if there is something "that places the case beyond the pale of duplicative proceedings." *Id.*

I do not consider this to be such a unique case that it would result in a level of duplication that would be "beyond the pale." There is certainly overlapping evidence in the Louisiana Case and the Federal Case. But the cases also deal with different contracts and claims, and they are, in that sense, distinct. The Louisiana Case involves the alleged breach of two confidentiality agreements signed in Louisiana, as well as the alleged breach of various duties owed to Paychex by two employees it had hired and the allegedly improper divulgence of trade secrets under Louisiana law. Meanwhile, the Federal Case involves the alleged breach of the Settlement Agreement and the Non-Solicitation Agreement (both of which arose out of the 2016 Case), as well as the allegedly improper divulgence of trade secrets under Maine and federal law. I am not convinced that the duplication of efforts resulting from the parallel litigation weighs in favor of abstention. *See id.* ("[A] duplication of effort,

10

while wasteful, is not exceptional." (quoting *Gentron Corp. v. H.C. Johnson Agencies, Inc.*, 79 F.R.D. 415, 418 (E.D. Wis. 1978))). "The parallel actions here trigger, at most, only routine risks presenting no occasion to animate the piecemeal litigation factor." *Nazario-Lugo*, 670 F.3d at 117.

Although factor four is nominally focused on "the order in which the courts obtained jurisdiction," this is "a misnomer, as 'the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction.' " *Jiménez*, 597 F.3d at 30 (quoting *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991)). Accordingly, I must consider which "case . . . is the more advanced at the time the *Colorado River* balancing is being done." *Id.* at 31 (quoting *Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995)). This factor unquestionably favors the federal forum. Discovery continues in the Louisiana Case with no end date or trial date in sight. Meanwhile, discovery has now closed in the Federal Case, and the Plaintiffs have already noticed their intent to file summary judgment. It is only the Defendants' motion that is standing in the way of scheduling a Local Rule 56(h) pre-filing conference and moving forward with my consideration of the Plaintiffs' dispositive motion.[3]

---

[3] I also note that although the Louisiana Case was filed first, the Plaintiffs represent (and the Defendants do not dispute) that they could not have filed the Federal Case first. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (noting that respondent "simply had no reasonable opportunity to file its . . . petition first"). Nor could they have filed it much sooner than they did. The Plaintiffs did not learn about Mr. Rode's participation in the conduct giving rise to the Louisiana Case (and thus his and his company's alleged breaches of the Settlement Agreement and Non-Solicitation Agreement) until after receiving discovery sometime after March 10, 2020. And they did not finish deposing Mr. Rode in the Louisiana case until October 21, 2020. They then filed the Federal Case less than three months later.

11

Factor five is concerned with whether state or federal law controls. Here, federal law controls at least with respect to the Plaintiffs' DTSA claim. The Defendants argue that the Maine and Louisiana trade secret laws "provide[ ] the same relief as the federal statute." Defs.' Mot. 9. But the Defendants do not adequately support this contention. It is true that "Congress went out of its way to make clear that the DTSA does not preempt state trade secret laws" but "merely provides 'a complementary Federal remedy.'" *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, Civil Action No. 16-2499, 2017 WL 1105648, at *7 n.17 (E.D. Pa. Mar. 24, 2017) (quoting H.R. Rep. No. 114-529, at 5 (2016)). But that does not mean that the statutes are the *same*. In fact, the DTSA was enacted in part because of the "built-in limitations" in states' trade secrets laws that Congress concluded would "make them not wholly effective in a national and global economy.'" *Id.* (quoting H.R. Rep. No. 114-529, at 5). And "[t]here are key differences between" the DTSA and at least some state trade secrets statutes. *Id.* at *3.

I do not doubt that the Louisiana court could adequately consider the DTSA claim. And the bulk of the Complaint involves issues under Maine law while the Louisiana Amended Complaint is brought under Louisiana law. So, this factor strikes me as neutral, particularly since it does not appear that the issues of law in either case are "complex" or "novel." *See Nazario-Lugo*, 670 F.3d at 118. More important is that the Louisiana court cannot adjudicate some of the other claims that the Plaintiffs have brought in the Federal Case, which brings me to factor six.

12

Factor six evaluates whether the state forum can adequately protect the parties' interests. In this case, it cannot. The Defendants brush past this factor without analysis, ignoring the fact that the forum selection clause in the Settlement Agreement prevents the Plaintiffs from being able to bring their claim for a breach of the Settlement Agreement (and potentially their claims for breaches of the Non-Solicitation Agreement) in Louisiana. Thus, if I were to dismiss this case, the Defendants would be barred from bringing facially valid claims that they are entitled to assert.[4] That cannot be considered adequate protection of the Plaintiffs' interests.

The Defendants contend that the First Circuit's decision in *Jiménez v. Rodríguez-Pagán* indicates why dismissal or a stay is warranted, Defs.' Mot. 7–8, but I understand *Jiménez* to demonstrate the opposite. In *Jiménez*, the First Circuit found that abstention was appropriate where the federal court could not resolve the whole of the case due to an inability to join some necessary defendants without destroying diversity, a problem that did not exist in the case pending before the Puerto Rico court. 597 F.3d at 22, 29–30. There, the issue was not one of "duplicative adjudication" but one of "fragmented adjudication," which "warrant[ed] consideration in the *Colorado River* analysis." *Id.* at 30. It made sense, then, for the federal court to abstain in favor of the Puerto Rico court that was able to adjudicate the rights of all of the relevant parties.

---

[4] Similarly, staying this case would delay the Defendants' ability to seek relief on facially valid claims. And granting a stay still requires me to "conclude[ ] that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. But here, I conclude the opposite.

13

Here, the opposite situation is at play. It is the *state court* that cannot resolve the whole of the case due to the existence of the forum selection clause requiring disputes arising out of or relating to the Settlement Agreement to be brought in Maine. It thus makes little sense to cede jurisdiction to a court that cannot adjudicate all of the legal claims at issue. The Supreme Court confronted a similar situation in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1 (1983). There the Court found that the district court had abused its discretion in staying the federal case in favor of a state proceeding because of "the probable inadequacy of the state-court proceeding to protect" the rights of the defendant, since there was "substantial room for doubt that [that defendant] could obtain from the state court an order compelling the [plaintiff] to arbitrate." 460 U.S. at 26–27.[5] In this case, it is

---

[5] *Moses H. Cone* involved a contract between a hospital and a construction contractor. 460 U.S. at 4. Pursuant to the contract, all disputes between the parties were to be referred in the first instance to an independent architectural firm (the "**Architect**") overseeing the project. *Id.* Once the Architect made its decision, the parties could turn to binding arbitration under the contract's arbitration clause. *Id.* at 5. But when a dispute arose under the contract, the hospital filed a declaratory judgment action in state court against both the contractor and the Architect seeking three declarations: 1) the contractor had no right to arbitration for this particular dispute; 2) that the hospital was not liable for the dispute; and 3) if the hospital was liable, it was entitled to indemnity from the Architect. *Id.* at 6–7. The contractor then filed a federal suit seeking to compel arbitration pursuant to § 4 of the United States Arbitration Act of 1925, 9 U.S.C. § 4. *Id.* at 7.

The state court lawsuit that the hospital had initiated involved two separate disputes—the hospital's dispute with the contractor (over arbitrability and liability) and the hospital's dispute with the Architect (over indemnity). *Id.* at 19. But the latter dispute could not be sent to arbitration without the Architect's consent because the hospital and the Architect (unlike the hospital and the contractor) did not have an arbitration agreement. *Id.* at 19–20. The Supreme Court acknowledged that if the contractor were to get an arbitration order in federal court, the hospital would "be forced to resolve these related disputes in different forums." *Id.* at 20. But, the Court recognized, "[t]hat misfortune . . . is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 20. In other words, it may have been the case that federal law required the hospital and the contractor to arbitrate their dispute while the hospital's dispute with the Architect continued on a parallel track in another forum. The Court held that since it would prevent the contractor from being able to assert federal law to compel arbitration, a stay of the federal court proceeding was inappropriate. *Id.* at 26–27.

14

not only *probable* that the Louisiana state proceeding cannot adequately adjudicate the Plaintiffs' claims, it is *clear* that it cannot. The Plaintiffs are contractually precluded from bringing all of their claims in that forum. This factor thus tips decidedly in the Plaintiffs' favor.

The last relevant factor in the non-exclusive list laid out by the First Circuit is factor seven, which considers whether the federal claim is vexatious or contrived. The Defendants rely on their same erroneous argument regarding the scope of the DTSA as for factor five, Defs.' Mot. at 10, and I again reject it. Nor do I find anything vexatious about the Plaintiffs bringing claims involving disputes arising under the Settlement Agreement in the contractually agreed-upon forum. This factor does not favor the Defendants.

Because the list of factors outlined by the First Circuit is not exclusive, I am free to consider any other relevant factors in my analysis. I thus also consider the Defendants' delay in bringing this motion. The Plaintiff's initially filed this action in January of 2020. The Defendants filed their Answer on April 15 and waited six and a half months (until sixteen days before the close of discovery) before filing the instant motion. They offer no explanation for what changed in the intervening months that they believe made it appropriate to file this motion now or for why they did not think it necessary to file it in April. I find it significant that the Defendants had no issue with this parallel litigation until just before discovery was set to close. This, too, demonstrates that both the Louisiana Case and Federal Case can coexist while being litigated on parallel tracks.

Finally, I address the Plaintiffs' cursory allegation that the Defendants have breached the Settlement Agreement by filing this motion and their associated request for fees and costs. Pls.' Opp'n 2, 17. The Plaintiffs do not explain their entitlement to fees and costs. I do not agree that an attempt to invoke the *Colorado River* doctrine necessarily violates the Defendants' agreement to submit to jurisdiction in the Maine courts. This inadequately-developed request for fees and costs is **DENIED**.

## CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss or stay (ECF No. 23) is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated this 20th day of December, 2021.